UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 20-cr-137 (NEB/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Keegan Jamaal Rolenc, | |
| Defendant. | |

This case is before the Court on Defendant Keegan Jamaal Rolenc's ("Defendant" or "Rolenc") Motion to Magistrate Judge for Reconsideration of Detention Order Based on New Information ("Motion") (Dkt. 48). Rolenc seeks release on conditions of house arrest, electronic monitoring, no visitors, and supervision by his mother and stepfather. (*Id.* at 6.) Rolenc argues that his proposed conditions were not previously available to the Court and that Sherburne County Jail has suffered an outbreak of COVID-19 which puts him at severe risk due to his asthma. (*Id.* at 1.) The Court held a hearing on the Motion on January 8, 2021, at which Rolenc's mother and stepfather testified. (Dkt. 61.) For the reasons stated below, the Court denies the Motion.

**I.      BACKGROUND**

On July 14, 2020, Rolenc was indicted on three counts: Felon in Possession of a Firearm – Armed Career Criminal, Possession with Intent to Distribute Cocaine, and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, all arising from alleged conduct on February 2, 2020. (Dkt. 1.) The United States of America ("the

Government") sought Rolenc's detention at his initial appearance on July 17, 2020. (Dkt. 6.) Pretrial Services prepared a Pretrial Services Report dating July 17, 2020 ("July 17 Report") that noted Rolenc's substantial family ties to Minnesota but concluded that "as of this writing, there does not appear to be a condition or combination of conditions which exist that would ensure the defendant's appearance at future Court proceedings and ensure the safety of the community" because "defendant's background information and current residence has not been independently verified by the undersigned and his parole status remains under investigation." (Dkt. 15 at 6.) The July 17 Report stated that Rolenc had been residing at his mother's residence since December 2016. (*Id.* at 1.) An Addendum to the Pretrial Services Report dated July 22, 2020 ("July 22 Addendum") stated that Rolenc's mother would allow him to return to her home and would act as a third-party custodian and help with his supervision, but nevertheless recommended detention. (Dkt. 16.) The July 22 Addendum explained that "[t]hough this officer recognizes the defendant's ties and support system, his proposed release address is where he has been residing for the past several years." (*Id.* at 2.)

On July 22, 2020, U.S. Magistrate Judge Katherine M. Menendez held an evidentiary detention hearing. (Dkt. 13.) At the detention hearing, Minneapolis Police Officer Andrew Schroeder testified regarding the circumstances of Rolenc's arrest on the federal warrant stemming from his indictment. (*See* Dkt. 18 at 2 ¶ 4.) In an Order dated July 29, 2020 ("July 29 Detention Order"), Judge Menendez found that there was a rebuttable presumption in favor of detention because Rolenc was charged with a drug trafficking crime for which the penalty is 10 years or more and using and carrying a

firearm during and in relation to a drug trafficking crime, violations of 21 U.S.C. § 841(b)(1)(C) and 18 U.S.C. § 924(c), respectively. (*Id.* at 1 ¶ 1.) The Pretrial Services Reports "outlined Rolenc's history," including convictions for second degree assault and drive-by shooting in 2012, third degree assault in 2017, and felony drug possession in 2012 and 2013, and recommended detention. (*Id.* at 1-2 ¶ 3.)

With respect to Officer Schroeder's testimony, Judge Menendez found as follows:

> Minneapolis Police Officer Andrew Schroeder provided testimony regarding the circumstances of Rolenc's arrest on the federal warrant stemming from his indictment. As the primary investigating officer on the underlying charges, Officer Schroeder was aware that a federal grand jury had indicted Rolenc and that there was a federal arrest warrant. On Thursday July 16, Officer Schroeder learned through social media that Rolenc was in a particular area of north Minneapolis, and he aired the information to officers who were patrolling that area. Patrol officers observed Rolenc driving in a blue Kia, and conducted a traffic stop. After confirming Rolenc's identity, officers placed him under arrest. The only other occupant of the vehicle was a small child who was secured in a car seat in the back seat. During a search of the area immediately surrounding the driver's seat, officers located a loaded handgun with an extended magazine and a cartridge in the chamber, and a large amount of cash.
>
> Officer Schroeder testified that the Kia was not registered to Rolenc, but was registered to a member of his household. The bond report indicates that Rolenc resides with his mother (in a home she has owned for many years), step-father, and younger sibling. The bond report also shows that Rolenc has charges pending in Hennepin County that are based on the same offense conduct alleged in the indictment, and that he was therefore on pretrial release at the time of his arrest.

(*Id.* at 2 ¶¶ 4-5.)

Judge Menendez found that Rolenc did not present a risk of nonappearance because he was a lifelong resident of Minnesota, had strong ties to the community, and appeared to have been making his state court appearances. (*Id.* at 2-3 ¶ 7.) However, she

3

did find that the Court could not craft conditions of release that would assure the safety of the community if Rolenc was released pending trial based on the nature of the instant charges, which included allegations that Rolenc was in possession of a gun and a distributable amount of cocaine in February 2020, Rolenc's history of convictions for assaults and drug offenses, evidence that he was in possession of a gun at the time of his arrest on July 16, 2020, and the pretrial services report. (*Id.* at 2-3 ¶¶ 6-7.) She found that Rolenc had failed to rebut the presumption in favor of detention on the issue of danger to the community, and that detention was appropriate. (*Id.* at 3 ¶ 8.) Judge Menendez further found that even if Rolenc had rebutted the presumption, the Government had shown by clear and convincing evidence that no condition or combination of conditions would assure the safety of the community if he were released. (*Id.*)

Judge Menendez also noted that Rolenc claimed to suffer from severe asthma since childhood and that his mother verified this health concern. (*Id.* at 3 ¶ 9.) Accordingly, the July 29 Detention Order stated:

> The Court recognizes that those with severe asthma are at greater risk of serious illness should they contract COVID-19. The Sherburne County jail – where Rolenc will presumably be housed pending trial – has thus far been able to prevent outbreaks in their facility. Should that situation change, such that Rolenc (through counsel) can present new information related to his risks in Sherburne County, a motion to reconsider this order can be made at that time.

(*Id.*)

On October 29, 2020, the Court held an in-person hearing regarding Rolenc's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 26), at

4

which several witnesses testified, including Rolenc[1] (Dkt. 35; Dkt. 44 at 115).  The Court continued the hearing until November 4, 2020 to permit an expert witness called by Rolenc to testify by Zoom for Government.  (Dkt. 35 (continuing hearing); Dkt. 40 (minute entry for continued hearing).)  That suppression motion remains under advisement.  Rolenc has since filed a Second Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 57), which is set for an in-person hearing on February 11, 2021 (Dkt. 62).

On November 5, 2020, a grand jury returned a Superseding Indictment charging Rolenc with another count of Felon in Possession of a Firearm – Armed Career Criminal arising from alleged conduct on July 16, 2020.  (Dkt. 42 at 3.)  The Second Motion to Suppress relates to a search of Rolenc's person and vehicle on July 16, 2020.  (Dkt. 57.)

On December 6, 2020, Rolenc filed his Motion to Magistrate Judge for Reconsideration of Detention Order Based on New Information.  (Dkt. 48.)  On December 8, 2020, Rolenc was arraigned on the Superseding Indictment.  (Dkt. 50.)  At that hearing and in a subsequent Order, the Court set a schedule for briefing and an updated recommendation from Pretrial Services.  (Dkt. 49.)  Counsel for Rolenc stated at the December 8 proceeding that a hearing would be necessary only if the Court wanted to hear directly from Rolenc's mother and stepfather about their willingness to serve as

---

[1]  Rolenc testified pursuant to *Simmons v. United States*, 390 U.S. 377, 394 (1968), which held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." (Dkt. 44 at 114:7-11.)

third-party custodians and their understanding of that obligation, and that Rolenc would agree to proceed by video at such a hearing.

Pretrial Services provided its updated recommendation in the form of a Status Report on December 10, 2020, which was re-filed on December 21, 2020 ("December 21 Status Report"). (Dkts. 52, 56.) The December 21 Status Report noted that Rolenc was on active supervised release in Rice County District Court for the third degree assault conviction referenced in the July 29 Detention Order when the alleged February 2 conduct occurred and that Rolenc was allegedly found in possession of another firearm on July 16, 2020 (as charged in the Superseding Indictment). (Dkt. 56 at 1.) The December 21 Status Report further noted that Rolenc was in violation status in Rice County due to the February 2 charges and that on February 6, 2020, Rolenc provided a urine sample that tested positive for cocaine. (*Id.* at 2.) It also reported that Rolenc's mother and stepfather were willing to serve as third-party custodians for Rolenc and would permit him live with them in their residence, which they own. (*Id.* at 1.) As to Rolenc's duration in Sherburne County Jail, the December 21 Status Report noted that Rolenc had not incurred any known disciplinary actions and that while medical records were requested by Pretrial Services, they had not been received. (*Id.* at 2.)

Pretrial Services considered conditions including placement in a halfway house, location monitoring, and/or the use of a third-party custodian, but ultimately recommended continued detention on the grounds of danger to the community. (*Id.*) The December 21 Status Report specifically noted in its recommendation that Rolenc was initially released on bond without supervision in February 2020. (*Id.*) It further noted

6

that Rolenc was allegedly found to be in possession of another firearm in July 2020 while released on bond; that Rolenc is pending violation status in Rice County District Court, where he is on supervision for the third degree assault charge; and Rolenc's "pattern of felony criminal conduct involving violence and firearms." (*Id.*)

The Government filed its opposition to Rolenc's Motion on December 11, 2020. (Dkt. 53.) Rolenc filed a reply on December 12, 2020. (Dkt. 54.) Rolenc asked in his reply that the Court schedule a hearing to permit his mother and stepfather to testify as to their ability to effectively supervise Rolenc as third-party custodians if released. (*Id.* at 3.) On January 8, 2021, the Court held a hearing by Zoom for Government on Rolenc's Motion, at which Rolenc's mother and stepfather testified. (Dkt. 61.)

## II.     ANALYSIS

Rolenc seeks release on conditions of 24-hour house arrest with no visitors, subject to electronic location monitoring and the supervision of his parents, who have agreed to notify the Court in the event of a violation. (Dkt. 48 at 6; Dkt. 54 at 1.) Rolenc argues that these proposed conditions were not previously available to the Court and that Sherburne County Jail has suffered an outbreak of COVID-19 which puts him at severe risk due to his asthma. (Dkt. 48 at 1.) Rolenc states:

> The Sherburne County Jail has done an admirable job controlling Covid outbreaks at the jail. Unfortunately, the prison gates cannot stop a pandemic that is spreading uncontrolled in the community. According to Captain Brian Frank, the Jail Administrator, as of December 2, 2020, after suffering an outbreak in November, the Jail tested all inmates and staff every week over a three week period. Test one revealed 5 positive inmate tests. Three were already in quarantine, two were in the general population. In the second test, one inmate from the general population tested positive. In the third test, there were no positive inmates. Currently, there are no inmates who are recovering

>from a positive test; however, seven staff members are currently out of work as a result of Covid-like symptoms or exposure to someone who tested positive.

(*Id.* at 8.)

Rolenc further argues that it is unlikely that he will be tried in the next six months due to the superseding indictment and the suspension of all in-person hearings until February 1, 2021 (at the earliest). (*Id.* at 7.) Rolenc expresses concern that another COVID-19 outbreak could change from limited to spreading out of control. (*Id.* at 8.) Finally, Rolenc asserts that he was unable to assist in his defense because the inmate population was on lockdown for nearly a month, during the time of the positive COVID-19 tests, preventing him from accessing online legal research tools and assisting in developing the legal arguments for pretrial motions. (*Id.*)

The Government responds that the proposed release to Rolenc's parents' residence bears on risk of flight, not danger to the community. (Dkt. 53 at 4.) The Government emphasizes Rolenc's criminal history, which "includes five prior felonies, two of which were drug felonies, and the other three of which were violent"—including a drive-by shooting and second degree assault, as well as a "violent[] assault[ on] the mother of his child when she visited [Rolenc] in prison." (*Id.* at 5.) The Government described as "extraordinarily troubling that the Defendant, knowing [he] had been arrested in February of 2020 with cocaine and a 9mm semi-automatic pistol, would again be found in possession of a firearm upon his federal arrest five months later." (*Id.*) Finally, the Government argued that Rolenc's "stepfather and mother are not trained law enforcement o[r] court personnel, and it would be unreasonable to assign the responsibility of

8

protecting the public from someone with the access to drugs and firearms that the Defendant clearly has," even if their supervision were augmented by location monitoring. (*Id.*) The Government noted that Rolenc testified at the motions hearing that "he was in knowing possession [of] a firearm and of cocaine he intended to sell" but Rolenc's stepfather testified that he did not consider Rolenc a drug trafficker and would not expect to find narcotics or a firearm in Rolenc's vehicle. (*Id.* at 6.) The Government's final argument as to danger to the community was: "Supervision by prior courts have proved insufficient to prevent the Defendant from committing new crimes. It is unreasonable to ask his parents to do so." (*Id.*)

As to Rolenc's arguments regarding his legal defense, the Government contends that the frustrations Rolenc feels with regard to the pace of the case "apply to every defendant in pretrial custody in this District" and do not address Judge Menendez's findings regarding danger to the community. (*Id.*) Finally, as to Rolenc's health, the Government argues that his concerns about asthma do not outweigh the need to protect the community, particularly in view of the steps taken by Sherburne County Jail to mitigate the risks of COVID-19 and the fact its measures "appear to have successfully addressed" the positive COVID-19 test results relied on by Rolenc. (*Id.* at 7.)

In his Reply, Rolenc contends that the Government has not met its burden to show how he would threaten the community if released under the proposed conditions. (Dkt. 54 at 2.) He reasons:

> If he is not permitted out of the house and is not permitted visitors, he will not have access to guns or drugs. It does not take trained law enforcement to know if Mr. Rolenc has violated those rules. If a visitor comes to the

9

> house, his parents will notify Pretrial. If he leaves the house, his parents will notify Pretrial. Those rules are not open to questions of interpretation. Either he is in the house or he isn't. And Pretrial will already know the answer to that question from the location tracking device.

(*Id.*)

The Court understands Rolenc is seeking release under both 18 U.S.C. § 3142(f) and § 3142(i) of the Bail Reform Act. The Court analyzes each subsection in turn below.

## A.    Reopening of Detention Hearing Under 18 U.S.C. § 3142(f)

The Bail Reform Act provides that a detention hearing may be reopened "if the judicial officer finds that information exists **that was not known to the movant at the time of the hearing** and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added). "In other words, to reopen a detention hearing a defendant must, first, 'present [] information that was not known or available to him at the time of his original detention hearing,' and then, second, show that such information 'is material to and has a substantial bearing on whether he should remain detained.'" *United States v. Petters*, No. 08-364 (RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009) (quoting *United States v. Archambault*, 240 F. Supp. 2d 1082, 1084 (D.S.D. 2002)).

### 1.    Rolenc's Parents' Willingness to Act as Third-Party Custodians

Rolenc argues that his proposed release conditions of 24-hour house arrest with no visitors, subject to electronic location monitoring and the supervision of his parents, who have agreed to notify the Court in the event of a violation, have a material bearing on the

10

danger he poses to the community (Dkt. 54 at 2) and are "new conditions of release to propose to the Court, not previously available" (Dkt. 48 at 1). However, Rolenc's parents' willingness to permit him to live with them and to act as third-party custodians is not information that was not known or available to Rolenc at the time of the initial detention hearing. Rather, the July 22 Addendum states:

> [Rolenc's mother] advised she remains supportive of the defendant and will allow him to return to her residence if considered for release. After being informed of expectations associated with potentially serving as a third-party custodian, [Rolenc's mother] agreed to be a custodian and to aid in the defendant's supervision, if such is a consideration of this Court.

(Dkt. 16 at 1.) Accordingly, Rolenc's parents' willingness to supervise him, let him live with them, and act as third-party custodians does not meet the standard for reopening under § 3142(f). As to the proposed location monitoring, prohibition on visitors, and house arrest, these are conditions of release which would have been available at the detention hearing in July.

Rolenc also argues that the undersigned, unlike Judge Menendez, has had the opportunity to hear from Rolenc and his family and friends directly at the motions hearing held on October 29, 2020, and this "evidence demonstrates Mr. Rolenc's strong family ties."[2] (Dkt. 48 at 5-6.) But Judge Menendez already recognized Rolenc's strong community ties when ordering him detained (Dkt. 18 at 2-3 ¶ 7), and the July 17 Report

---

[2] The July 17 Report and July 22 Addendum indicated that Rolenc reported that he had been living with his mother and stepfather when he was stopped by the police on February 2, 2020 (Dkt. 15 at 1; Dkt. 16 at 2), but Rolenc's and his stepfather's testimony has made clear that Rolenc was in fact living in his own residence at that time (Dkt. 44 at 94:8-12, 116:20-23).

11

she considered noted Rolenc's "substantial family ties" (Dkt. 15 at 6). In other words, Rolenc's strong family ties are not "information . . . that was not known" when the July 29 Detention Order issued and do not warrant reopening the detention hearing.

Even if the Court were to reopen the detention hearing based on the testimony, the Court still would need to consider if, in view of that testimony, "there are conditions of release that will reasonably assure the appearance of [Rolenc] as required and the safety of any other person and the community," 18 U.S.C. § 3148(f), based on the factors set forth in 18 U.S.C. § 3142(g).

Section U.S.C. § 3142(g) of the Bail Reform Act provides:

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has carefully considered the testimony of Rolenc's family and friends at the October 29, 2020 and January 8, 2021 hearings. Rolenc's stepfather and many of Rolenc's friends testified at the October 29, 2020 hearing that they do not consider Rolenc a drug trafficker and would not expect to find narcotics or a firearm in his car. (*E.g.*, Dkt. 44 at 80:2-12, 90:12-21, 99:23-100:3, 105:19-106:2, 113:11-22.) Rolenc's stepfather and mother testified at the January 8, 2021 hearing that they both typically worked at home due to the COVID-19 pandemic; they do not permit drugs or firearms in their house; they understood their responsibilities as third-party custodians would include making sure Rolenc did not leave the house or have visitors, as well as searching his possessions; and they would report any violations of the proposed pretrial release conditions to the Court, knowing it would result in Rolenc's arrest.

But, even taking into account the good intentions and credibility of Rolenc's mother and stepfather, the fact remains that Rolenc was on supervision for the third degree assault conviction when he was stopped and arrested on February 2, 2020 and was released on bond when he was arrested on a second firearms charge on July 16, 2020. The Court cannot ignore the fact that Rolenc testified that he had a backpack containing

narcotics (cocaine) and a firearm in his car when he was pulled over on February 2 and that he intended to sell the cocaine that night.  (Dkt. 44 at 134:23-135:14.)  The Court also cannot ignore that fact that the third degree assault conviction (guilty plea) apparently was based on an incident where Rolenc punched the victim in the face and then kicked, stomped on, and punched the victim while she was on the ground—which occurred while the victim was visiting Rolenc in prison and was recorded on surveillance video.[3]  (Dkt. 15 at 4.)  Given that much of Rolenc's admitted criminal conduct occurred while he was on supervision or in prison, the Court cannot find that Rolenc's parents, no matter how sincere and well-intentioned, can effectively supervise him.  The Court therefore finds that Rolenc's proposed conditions do not reasonably assure the safety of others and the community.

### 2. COVID-19 Pandemic

Rolenc also seeks release because "as the Court anticipated, the Sherburne County Jail has now suffered an outbreak of Covid-19, putting Mr. Rolenc at severe risk."  (Dkt. 48 at 1.)  Courts have taken different positions on whether the COVID-19 pandemic constitutes "information [] that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community" as required by § 3142(f).  *Compare United States v. Banks*, 4:19CR3116, 2020 WL 1450549, at *1 (D. Neb. Mar. 25, 2020) ("I am not

---

[3]  Rolenc has not challenged these facts as alleged in the July 17 Report.

convinced the COVID-19 pandemic is a 'material change of circumstances' warranting a renewed evaluation of my prior detention order.") (denying defendant's motion for release), *with United States v. Martin*, 447 F. Supp. 3d 399, 401 (D. Md. 2020) ("[T]he Court takes this health risk [the COVID-19 pandemic] extremely seriously, and recognizes that it can indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of detained defendants and secure the safety of the community."); *see also United States v. Ramirez-Rodriguez*, 453 F. Supp. 3d 1242, 1247-48 (D. Minn. 2020) (agreeing that defendant's "recently diagnosed diabetes, the profound risk posed by COVID-19, and the availability of a placement with a third-party custodian" constituted "new information" that "was not known to the parties at the time of the detention hearing, and that it has a material bearing on the Court's ability to craft conditions of release that will protect the community and secure [the defendant's] appearance"); *United States v. Terry*, No. 5:20-CR-50021-001, 2020 WL 4745746, at *2 (W.D. Ark. June 23, 2020) ("In this Court's opinion, the more persuasive position is that the COVID-19 pandemic *may* constitute a material change of circumstances that justifies renewed evaluation of a detention order, as the pandemic may relate to the detainee's 'physical and mental condition' under § 3142(g)(3)(A).").

Regardless, the "COVID-19 pandemic cannot be the sole basis for releasing a defendant from custody pending trial; the Court must still consider the Section 3142(g) factors." *United States v. Lee*, No. 19-CR-20112-03, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020); *see also Martin*, 447 F. Supp. 3d at 402 (explaining that "as

concerning as the COVID-19 pandemic is," a court must nonetheless conduct "an individualized assessment of the factors identified by the Bail Reform Act"). Here, Judge Menendez considered the § 3142(g) factors as part of the July 29 Detention Order, including the COVID-19 pandemic, the risk the pandemic poses to Rolenc due to his severe asthma, and the fact that Sherburne County Jail "ha[d] thus far been able to prevent outbreaks in their facility." (Dkt. 18 at 1-3 ¶¶ 1-9.) Rolenc does not challenge any of those findings, but rather focuses on the "outbreak" at Sherburne County Jail in November. (Dkt. 48 at 8.) The Court takes very seriously the risks posed to Rolenc due to the COVID-19 pandemic and the fact that, as of the date of his Motion, six inmates at Sherburne County Jail had tested positive for COVID-19. (*See id.*) However, it appears that the Jail has prevented any further spread of the disease at this time. The Court also takes seriously Rolenc's concerns, based on "the experience of the Bureau of Prisons," that an outbreak can spread from limited to out of control in "a matter of days." (*Id.*) It appears, though, COVID-19 has not spread within Sherburne County Jail as a result of the December 2020 positive results, apparently reflecting the effectiveness of the "significant steps [Sherburne County Jail] has undertaken to prevent and mitigate the risks posed by COVID-19 to inmates' health and safety," *see United States v. Graham*, 452 F. Supp. 3d 871, 878 (D. Minn.), *aff'd*, No. 20-1903, 2020 WL 6326339 (8th Cir. June 4, 2020), *cert. denied*, 141 S. Ct. 434 (2020). As to the Bureau of Prisons experience, the record does not permit the Court to infer that the Bureau of Prisons had implemented mitigation measures comparable to those implemented by Sherburne County Jail, yet experienced a major outbreak notwithstanding those measures.

16

In view of the danger that Rolenc poses to the community if released, the Court concludes that the current COVID-19 risk at Sherburne County Jail does not outweigh the evidence and previous findings that Rolenc poses a danger to the community if released. The Court therefore denies the Motion to the extent it is based on § 3142(g).

**B.     Temporary Release Pursuant to 18 U.S.C. § 3142(i)**

Rolenc also seeks temporary release pursuant to 18 U.S.C. § 3142(i). (Dkt. 48 at 8-9.) Section 3142(i) provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason."

The Court finds that Rolenc has not presented a compelling reason for temporary release pursuant to § 3142(i). Courts have adopted a framework for analyzing an assertion of COVID-19 as a compelling reason for release under § 3142(i) and consider the following: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See, e.g.*, *United States v. White*, No. 19-cr-204 (ECT/BRT), slip op. at 8 (D. Minn. Apr. 1, 2020) (citing *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020) (applying four-factor test from *United States v. Clark*, 448 F. Supp. 3d 1152, 1157 (D. Kan. 2020))); *United States v. Dodd*, No. 20-CR-0016 (NEB/HB), 2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020)

17

(applying *Clark* factors).

The first factor weighs heavily in favor of continued detention based on Judge Menendez's original analysis.  As for the second factor, the Court acknowledges Rolenc's concerns based on his severe asthma, but notes that courts have rejected release under § 3142(i) even where the defendant had an underlying health condition, including asthma, that placed them at an increased risk.  *See United States v. Green*, No. CR 19-85, 2020 WL 1493561, at *1 (W.D. Pa. Mar. 27, 2020) (acknowledging defendant's documented history of asthma, but denying temporary release); *United States v. Cox*, No. 219CR00271RFBVCF, 2020 WL 1491180, at *4 (D. Nev. Mar. 27, 2020) (discussing the risk COVID-19 poses to a diabetic inmate but denying temporary release); *Clark*, 448 F. Supp. 3d at 1158-59 (same).  Further, as discussed in *Clark*, "[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody."  448 F. Supp. 3d at 1161.  Given Rolenc's history of non-compliance while on supervision, the Court is not confident that he will comply with the proposed conditions so as to protect himself from the pandemic, and he may place the public as whole at a higher risk with respect to spread of the virus.

Finally, the Court considers the effect of the pandemic on Rolenc's ability to prepare his defense and the delay of his case.  The Court has now set an in-person hearing for February 11, 2021 on Rolenc's Second Motion to Suppress.  (Dkt. 62.)  As to Rolenc's inability to access online legal research tools and assist in the preparation of his

CASE 0:20-cr-00137-NEB-ECW   Doc. 66   Filed 01/21/21   Page 19 of 19

defense, Rolenc is represented by counsel, and the Court understands that Rolenc is able to consult confidentially and privately with counsel by video. Consequently, Rolenc's concerns about his ability to prepare his defense do not constitute a compelling reason for his pretrial release. *See United States v. Taylor*, No. CR 5:19-192-KKC, 2020 WL 4529810, at *3 (E.D. Ky. June 24, 2020) ("As to Taylor's argument that he is unable to perform legal research on his own due to restrictions caused by COVID-19, a criminal defendant has the right to retained counsel or to appointed counsel if he is indigent. The Court has appointed counsel to represent Taylor. Thus, Taylor has no need to do his own legal research, nor is the Court obligated to ensure that he is able to conduct such research. Taylor complains that he has not been able to review discovery 'independently.' It appears that he has been able to review discovery with his lawyer during video conferencing sessions. Taylor does not explain why it is necessary to his defense that he review discovery without his lawyer present or why reviewing discovery via video conferencing is inadequate.") (citations omitted). The Court therefore denies the Motion to the extent it is based on § 3142(i).

### III.  ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Keegan Jamaal Rolenc's Motion to Magistrate Judge for Reconsideration of Detention Order Based on New Information (Dkt. 48) is **DENIED**.

DATED: January 21, 2021                     *s/Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge

19